O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROMO DIMAS, et al., | ) | Case No. CV 13-08840 DDP (ASx) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING IN PART** |
| | ) | **PLAINTIFFS' MOTION FOR SUMMARY** |
| v. | ) | **JUDGMENT** |
| | ) | |
| TAPIA MATILDE, et al., | ) | [Dkt. No. 22] |
| | ) | |
| Defendants. | ) | |

Presently before the Court is Plaintiffs Alfredo Romo Dimas, Ignacio Romo Dimas, Juan Luis Romo Dimas, Rogelio Romo Dimas, Guillermo Romo Dimas, and Gilberto Romo Dimas (collectively, "Plaintiffs")'s Motion for Summary Judgment ("MSJ").  (Docket No. 22.)  Defendants Favian Tapia Matilde ("Matilde") and Delia Tapia (collectively, "Defendants") have not filed an opposition.  Having reviewed Plaintiffs' submissions and heard oral argument, the Court GRANTS Plaintiffs' motion as to the federal trademark infringement claim and the cancellation of Defendants' trademark, and adopts the following order.

///

///

## I. BACKGROUND

Plaintiffs are brothers and members of the musical group Samuray, which Plaintiffs founded in Mexico in 1990. (Declaration of Alfredo Romo Dimas ("Dimas Decl."), Docket No. 22-2, ¶ 2. As director of the group Samuray, Plaintiff Alfredo Romo Dimas ("Alfredo") registered the service mark "SAMURAY" in International Class 41 with the United States Patent and Trademark Office ("USPTO") on October 23, 2012.[1] (Plaintiffs' Separate Statement of Uncontroverted Facts and Conclusions of Law ("SUF"), Docket No. 22-28, ¶¶ 1, 5; Dimas Decl. Ex. 1.) Plaintiffs have used the SAMURAY mark in connection with their musical group and the performances of their musical group continuously since 1990. (SUF ¶¶ 2-4.) Plaintiffs have used the SAMURAY mark in commerce in the United States as early as 1991. (Id. ¶ 3.) Plaintiffs first use the SAMURAY mark in commerce in connection with goods (namely, records and CDs) as early as 1992, and have done so continuously since 1992. (Id. ¶¶ 8-9.) Plaintiffs have released at least 15 different albums of recordings from 1992 through 2014. (Id. ¶ 10; Dimas Decl. ¶ 7, Ex. 4-18.)

The packaging of Samuray's albums and promotional materials typically displays the name "SAMURAY" in distinctive font with a round symbol behind the word. (SUF ¶¶ 16-17.) Samuray performs a genre of Mexican music that is known as "romantico" or a "romantic" style. (Id. ¶ 18.) Oftentimes the group is promoted with the

---

[1] This order uses "Samuray" to refer to the musical group, while it uses "SAMURAY" in capital letters to refer to Plaintiffs' registered service mark.

2

nickname "los guerreros del amor," or "the warriors of love." (Id. ¶¶ 20-21.)

In 2009, Defendant Matilde filed an "intent to use" application to register the trademark "EL ROMANTICO SAMURAY" in international class 9, in connection with goods, including records and CDs. (Id. ¶ 24.) In response to requests from the USPTO, Matilde created three exhibits demonstrating the EL ROMANTICO SAMURAY mark. (Id. ¶ 28.) These exhibits were created solely to present to the USPTO and were never produced or used commercially. (Id.) In 2012, Matilde filed a trademark application for "EL ROMANTICO SAMURAY" as a service mark in international class 41. (Id. ¶ 37.)

Matilde first learned of the existence of the Samuray musical group in 1990. (Id. ¶ 22.) Matilde has a musical group that plays songs by Samuray (otherwise known as "covers"). (Id. ¶ 23.) Matilde began using the EL ROMANTICO SAMURAY mark in January 2010. (Id. ¶ 39.) Matilde's El Romantico Samuray group plays live music and distributes recordings. (Id. ¶¶ 49-50.) On multiple occasions, performances by Matilde's El Romantico Samuray group have been advertised as Plaintiffs' Samuray group, including using visual ads that depict the members of the Samuray group accompanied by a Samuray logo. (Id. ¶¶ 51-53.)

On November 27, 2013, Plaintiffs filed the present action against Defendants, alleging claims for (1) federal trademark infringement and unfair competition, (2) trademark infringement under California common law, (3) unfair competition under Cal. Bus. and Prof. Code §§ 17200 et seq., (4) false advertising under Cal. Bus and Prof. Code §§ 17500 et seq., (5) interference with

prospective business advantage, (6) cancellation of registration of trademark, (7) accounting, and (8) injunctive relief.  (Docket No. 1.)  Defendants filed an Answer.  (Docket No. 10.)  Plaintiffs have now moved for summary judgment.  (Docket No. 22.)  Defendants have not filed an opposition.

## II. LEGAL STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  All reasonable inferences from the evidence must be drawn in favor of the nonmoving party.  See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 242 (1986).  If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." <u>Celotex</u>, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256.  Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

4

which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir.1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. DISCUSSION**

    **A.   Trademark Infringement under the Lanham Act**

Plaintiffs assert a trademark infringement claim under Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a)(1)(A). "To establish a trademark infringement claim," a plaintiff must show (1) it has valid, protectable trademarks, and (2) that defendant's use of the marks is likely to cause confusion. Applied Info. Sciences Corp. v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007).

        1.   Ownership of the Mark

"It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark

5

it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." <u>Sengoku Works Ltd. v. RMC Int'l, Ltd.</u>, 96 F.3d 1217, 1219 (9th Cir. 1996). "The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion." <u>Brookfield Commc'ns. Inc. V. West Coast Entm't Corp.</u>, 174 F.3d 1036, 1047 (9th Cir. 1999).

Plaintiffs have presented evidence that they are the senior user of the SAMURAY mark. They have used the SAMURAY name and mark continuously since 1990 for the purposes of their musical recordings and performances. Matilde first filed a trademark application for EL ROMANTICO SAMURAY in 2009. At deposition, Matilde testified that he did not begin using his EL ROMANTICO SAMURAY mark in conjunction with his performances until 2010. Therefore, although Matilde first registered a trademark using the "SAMURAY" name, Plaintiffs were the first to use the SAMURAY mark in commerce. <u>See</u> <u>Brookfield</u>, 174 F.3d at 1047 (stating that, although a registration of a mark with the USPTO constitutes prima facie evidence of a mark's validity, the presumption can be rebutted by a party showing that he first used the mark in commerce).

### 2. Likelihood of Confusion

Beyond ownership, the "core element" of a trademark infringement claim is the likelihood that the similarity of the marks will confuse consumers as to the source of goods or services.

1  <u>Freecycle Network, Inc. v. Oey</u>, 505 F.3d 898, 902 (9th Cir. 2007).
2  Relevant factors include the strength of the mark, proximity of the
3  goods, similarity of the marks, evidence of actual confusion,
4  marketing channels used, degree of care likely to be exercised by
5  consumers, defendant's intent, and likelihood of expansion of
6  product lines.  <u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d 941, 348-49
7  (9th Cir. 1979).  It is unnecessary to meet every factor, because
8  the likelihood of confusion test is "fluid".  <u>Surfvivor Media, Inc.</u>
9  <u>v. Survivor Prods.</u>, 406 F.3d 625, 631 (9th Cir. 2005).

     The strength of a trademark depends, in part, on its position on a spectrum ranging from generic to arbitrary.  <u>Rearden LLC v. Rearden Commerce, Inc.</u>, 683 F.3d 1190, 1211 (9th Cir. 2012). Arbitrary marks consist of words that have no connection with the product.  <u>Id.</u>  Here, "SAMURAY," a Spanish word meaning "samurai," has nothing to do with a musical group that performs traditional Mexican romantic music.  Accordingly, Plaintiffs' mark is strong.

     On balance, the Court finds that there is a high likelihood of confusion.  Although the alleged infringing mark is different from Plaintiffs' mark -- Matilde's mark adds the modifier "EL ROMANTICO" to the word "SAMURAY" -- the strength of the mark, the proximity of the use of the marks, their similarity, and evidence of actual confusion all weigh in favor of finding likelihood of confusion. Both marks use the distinctive word "SAMURAY."  Both musical groups perform similar music -- in fact, Matilde stated that his EL ROMANTICO SAMURAY group would play covers of Samuray songs.  Both musical groups perform in similar venues.  In fact, Alfredo discovered Matilde's group because his Samuray group was losing booking venues to the El Romantico Samuray group.  (Dimas Decl. ¶¶

7

1  17, 20.)  Alfredo spoke with one promoter who thought he had booked
2  the Samuray group, but only upon investigation discovered he had
3  booked the El Romantico Samuray group.  (Id. ¶ 20.)  Finally,
4  because Plaintiffs' mark is arbitrary because it is non-
5  descriptive, it is awarded "maximum protection."  E. & J. Gallo
6  Winery v. Gallo Cattle Co., 967 F.2d 1280, 1291 (9th Cir. 1992)
7  (holding that an "arbitrary" mark is "awarded maximum protection").
8  See also Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1390
9  (9th Cir. 1993) ("An arbitrary mark consists of common words
10 arranged in an arbitrary way that is non-descriptive of any quality
11 of the goods or services.").

   For the reasons stated above, the Court finds that there is a substantial likelihood of confusion.

### 3. Conclusion

The Ninth Circuit has recognized that "[b]ecause of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena." Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1209 (9th Cir. 2012).  "We have cautioned that district court should grant summary judgment motions regarding the likelihood of confusion sparingly, as careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record." Id. Given the evidence Plaintiffs have presented in this case, however, paired with the fact that Defendants have failed to file an opposition brief, the Court concludes that Plaintiffs are entitled to summary judgment on their trademark infringement claim.

Plaintiffs have requested that the Court grant a permanent injunction granting relief against future infringement by

Defendants. When summary judgment has been granted on a trademark infringement claim, court may grant a permanent injunction without a specific hearing on the issue. <u>Phillip Morris USA Inc. v. Shalabi</u>, 352 F. Supp. 2d 1067, 1074 (C.D. Cal. 2004). Given the irreparable harm Plaintiffs may suffer if injunctive relief is not granted, combined with the interest in protecting consumers from confusion, the Court will grant Plaintiff's request for injunctive relief. <u>See</u> <u>Metro Pub., Ltd. v. San Jose Mercury News</u>, 987 F.2d 637, 640 (9th Cir. 1993) ("Once the plaintiff has demonstrated a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted.").

**B.   Trademark Cancellation**

Plaintiffs also move the Court to cancel Defendants' EL ROMANTICO SAMURAY trademark, arguing that Defendants obtained the registration by fraud. To obtain cancellation of a trademark, a party must show: "(1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance." <u>Hokto Kinoko Co. v. Concord Farms, Inc.</u>, 738 F.3d 1085, 1097 (9th Cir. 2013).

Here, Plaintiffs contend that Matilde made a false representation to the USPTO when he created and submitted specimens with his trademark application that "were fakes that he created for the sole purpose of inducing the USPTO to issue him" the EL ROMANTICO SAMURAY mark. (MSJ at 16.) Plaintiffs have also

9

produced evidence that shows Matilde not only was aware of the Samuray group, but also played covers of Samuray songs. (SUF ¶¶ 22-23.) Matilde has not filed an opposition. Based on the evidence on the record, the Court finds that Plaintiffs are entitled to summary judgment on their cancellation claim.

### C. Plaintiffs' Other Claims

Although Plaintiffs seemingly move for summary judgment on all of their claims, their MSJ only addresses the claims for federal trademark infringement, cancellation, and injunctive relief. Plaintiffs' MSJ does not address their other claims, including their state law claims. Plaintiffs clarified at the hearing on this motion that they would not pursue the other claims. Accordingly, the Court will consider those claims abandoned.

## IV. CONCLUSION

The Court GRANTS summary judgment in favor of Plaintiffs on their claims for federal trademark infringement and cancellation of Defendants' trademark. The Court further GRANTS Plaintiffs' request for injunctive relief. The Court permanently enjoins and restrains Defendants Favian Tapia Matilde, Delia Tapia and their respective officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of the aforementioned persons from using the SAMURAY service mark, or any confusingly similar or colorable imitation of the mark, in any manner in connection with the sale, advertising, offering, announcing or promotion of musical services, such as live

///

///

1  performances of a musical group, or products, such as phonograph
2  records, CDs, DVDs or their digital counterparts.
3
4  IT IS SO ORDERED.
5
6
7  Dated: September 30, 2015
                                    DEAN D. PREGERSON
8                                   United States District Judge